**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200087-U

Order filed July 19, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0087 Circuit No. 13-MR-27 |
| | ) | |
| MICHAEL SMITH, | ) ) | Honorable Frank R. Fuhr |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the judgment of the court.
Presiding Justice McDade and Justice Wright concurred in the judgment.

**ORDER**

¶ 1      *Held*: Trial court did not err it when it granted the State's petition for defendant's commitment as a sexually violent person.

¶ 2      The trial court granted the State's petition to commit defendant Michael Smith as a sexually violent person (SVP), finding that he met the statutory criteria of a SVP and was substantially probable to reoffend. Smith appealed. We affirm.

¶ 3                               FACTS

¶ 4    The State filed a petition in January 2013 and an amended petition in May 2014 to commit defendant Michael Smith as a SVP under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2012)). The petitions alleged that Smith was convicted of predatory criminal sexual assault in 2004; he was diagnosed with the mental disorder of pedophilia, sexually attracted to both, nonexclusive type; and that "his mental disorder makes it substantially probable that he will engage in acts of sexual violence." Attached to the petition were the information, guilty plea, and judgment order for the predatory criminal sexual assault charge and conviction against Smith.

¶ 5    A bench trial commenced on the State's petition. John Arroyo testified. He was a SVP evaluator and an expert in clinical psychology, specifically in the evaluation and risk assessment of sex offenders. He reviewed Smith's master file, his Illinois Department of Corrections (IDOC) file, his Illinois Department of Human Services (IDHS) file and attempted unsuccessfully to interview Smith. He conducted a risk assessment and authored a report with his findings in 2012, which he supplemented in 2014 and 2018, and updated in 2019. Arroyo's opinion did not change over time. In reaching his opinion, Arroyo considered Smith's criminal history, his disciplinary history and his general behavior.

¶ 6    Arroyo testified that Smith was assigned to the Iowa State Training School when he was a teenager for sex offender treatment. That assignment resulted from a juvenile offense where Smith admitted to sexually assaulting a 7-year-old boy when Smith was 15 years old. He was sentenced to probation but violated the terms and was placed in state custody. Smith also admitted to fondling and engaging in oral sex with a 12-year-old and a 13-year-old cousin or peer when Smith was the same age. He reported other sexual behaviors in other evaluations. In some evaluations, Smith admitted to sexually assaulting a six-year-old child. He failed to comply with treatment and refused

2

to work with a therapist during his time in juvenile detention. After his release for the juvenile offense, Smith assaulted and was convicted of predatory criminal sexual assault, where he fondled and digitally penetrated the 11-year-old daughter of a friend and was sentenced to a 10-year term of imprisonment in the IDOC. In 2018, Smith was disciplined for engaging in nonconsensual sex with other inmates.

¶ 7     Arroyo further testified that Smith self-reported that he looked at children in magazines, watched child pornography and possessed photographs of children in swimsuits. He stole boy's underwear from a store and used it for sexual gratification. He also stole underwear from the home of one of his victims and used it to masturbate. Arroyo explained the results of the penile plethysmograph (PPG) test administered to Smith. A PPG instrument is used to determine arousal level. The results of the test did not reach a level of significance but were "clinically informative" to show some nonconsensual arousal with children who are prepubescent. Photographs of sexually explicit children cannot be used in administering the test. Although Smith claims he was no longer attracted to children, Arroyo did not find him to be reliable. Prior to his incarceration, Smith was involved in a nine-month relationship with a woman during which time he reoffended with a child. Smith was currently married to a man who also resided in the treatment facility, was diagnosed with pedophilic disorder, and had an interest in underage children.

¶ 8     As part of the treatment program, Smith was required to take a polygraph test to advance to the next stage of treatment. The results of the polygraph test indicated no evidence of untruthfulness by Smith. According to Arroyo, Smith's responses to the polygraph questions did not correspond with his self-reported history of offending. For example, Smith told Arroyo that his first victim was seven years old and that he used the threat of force when committing some offenses. However, he denied these facts during the polygraph examination. Arroyo performed

3

risk assessments on Smith using the Static-99R and the Static-2002R. He also considered additional factors that affect risk of re-offense. Smith scored a five on the Static-99R, which placed him at above average risk to be rearrested or reconvicted for another sex offense. Smith scored an eight on the Static-2002R, placing him in the well above average category to reoffend. Arroyo did not find that Smith had any protective factors that would decrease his risk of reoffending.

¶ 9    Arroyo diagnosed Smith with pedophilic disorder, nonexclusive type, sexually attracted to both. Smith engaged in sexual behavior with children under the age of 13, he admitted to urges and fantasies of prepubescent children, and he was at least five years older than the 11-year-old girl he assaulted in 2004. In his opinion, Smith was substantially probable to engage in acts of sexual violence. His mental disorder was congenital or acquired and predisposed him to commit acts of sexual violence. In Arroyo's opinion, Smith was a SVP.

¶ 10    In addition to diagnosing Smith with pedophilia, Arroyo also diagnosed him with antisocial personality disorder. This diagnosis was based on the facts that Smith stole money from his family and items from stores as a youth, he was not successful living in the community (not incarcerated), he engaged in problematic behaviors while in the institutional setting, such as continuing to act out sexually when in settings with lower levels of care and to lie, such as when he falsely reported that he was raped by another inmate when he was not.

¶ 11    On cross-examination, Arroyo acknowledged that Smith's response during the PPG test did not meet a level of significance such that a pattern of arousal could be determined. He also explained the results of Smith's polygraph test revealed no evidence of untruthfulness. He acknowledged that a juvenile brain is not fully developed, and that Smith had not been in a community environment after his brain stopped developing. Since he had been in a controlled environment, it was difficult to assess his attraction to children or his relationship with children.

4

On redirect examination, Arroyo further explained that although Smith said on the polygraph that his victims were over the age of eight years old and he never used force, his first offense was against a six-year-old child and he admitted that he used the threat of force on his victims. Arroyo also testified that pedophilic disorder is a lifelong condition that does not just go away.

¶ 12　　Smith was participating in sex offender treatment at the facility in which he was secured. It was a five-phase program and Smith had recently entered the third phase. To move out of phase two, Smith was required to take and pass a polygraph. While taking the test, he indicated that he had not had sexual contact with any individuals out of the 8-to-11 age range and that he never used physical force or a weapon to have sex. Smith did not show any significant response to the questions, indicating that there was no evidence of untruthfulness.

¶ 13　　Kimberly Weitl, a forensic psychologist and sex offender evaluator, testified as an expert. She reviewed Smith's master file and interviewed and evaluated him. She wrote her initial report in 2013, with an update in 2014, and again in 2016, 2018 and 2019 in preparation for trial. She diagnosed Smith with pedophilic disorder in a controlled environment, other specified paraphilic disorder, nonconsent, and antisocial personality disorder. Her diagnoses remained unchanged since she initially made them. Pedophilic disorder is a chronic lifelong disorder, which is managed with treatment but does not go away. Despite being in a controlled environment, Smith continued to behave in a sexually predatory manner, such as sexually harassing his roommate. Smith's mental disorders predisposed him to commit acts of sexual violence.

¶ 14　　The risk assessments she performed, the Static-99R and the Static-2002R, placed Smith well above average and at the highest risk to reoffend. He scored a six on the Static-99R and a nine on the Static-2002R. She looked at other risk factors, such as deviant sexual interests, early onset offending, global intimacy deficit, being unmarried and without children while in the community,

substance abuse and being under the influence when committing offenses, sexual preoccupation, antisocial lifestyle, personality disorder and attitudes in support of sex offending. She did not identify any protective factors that would mitigate the risk, such as age, medical conditions, or past treatment. She noted that PPG results indicated that Smith responded to a coercive factor, but found the test was not reflective because of the discrepancies between the test and Smith's self-reporting. Weitl described the results of the polygraph tests concerning because the questions asked were not accurate. In her opinion, Smith was substantially probable to reoffend and met the criteria of a SVP.

¶ 15        On cross-examination, Weitl said that although Smith was not reliable as a reporter, her evaluation was not based solely on his self-reports. She explained the discrepancy in her risk assessment scores as compared with the other evaluators, indicating that she scored for stranger abuse, although the two other evaluators did not. She also indicated an error in one of her low scores.

¶ 16        The parties stipulated that Smith had a prior conviction for predatory criminal sexual assault. The State rested and Smith moved for a directed verdict, which the trial court denied.

¶ 17        Luis Rosell, a forensic psychologist and sex offender evaluator, testified on Smith's behalf as an expert in evaluating individuals for SVP commitments. He evaluated Smith in September 2019 and again one month before the trial to determine whether he met the criteria of a SVP. He reviewed Smith's records, including criminal and treatment, prior evaluations and interviewed Smith. Rosell described Smith as inconsistent on historical facts, noting discrepancies in information Smith told other evaluators. For example, Smith told other evaluators that he masturbated five times a day and was sexually abused by his father, both of which he denied to Rosell. In Rosell's opinion, it was a positive that Smith passed the polygraph test, which was based

on admissions regarding his victims, he was progressing in treatment although it was against his best interests to participate while the petition was pending, and he was motivated to complete treatment.

¶ 18    Rosell diagnosed Smith with antisocial personality disorder but was not sure that pedophilic disorder was a current diagnosis. Rosell surmised that since Smith's self-reporting and PPG results did not show any deviant sexual arousal, the diagnosis might not be current. The fact that someone is diagnosed with a mental disorder does not equate with a lack of volitional capacity in that individual. A person diagnosed with pedophilic disorder does not automatically meet the criteria of a SVP. Although the arousal may never go away, the person may cease engaging in problematic behaviors. He explained the difficulty in diagnosing Smith was that it had been a long time since his last offense and Smith's behavior with other inmates was not predictive of future criminal sex offenses.

¶ 19    Rosell disagreed with Arroyo's interpretation of the PPG results, submitting that the lack of significant arousal means the results were insignificant. He also disagreed with Weitl's interpretation, which she said failed to show arousal to any stimuli, including adult men to whom Smith himself admitted he was attracted. It would not be uncommon for the results not to show arousal where the setting is a laboratory, which is uncomfortable and unnatural. He also performed the Static-99R and the Static-2002R, with the scores matching those from the tests administered by Arroyo once the changes in Smith's age were accounted.

¶ 20    In his opinion, Smith did not suffer from a mental disorder that would predispose him to engage in acts of sexual violence. He based his opinion on the lack of predictive value of the risk assessments, the beneficial treatment progress Smith was making, and the overall behavioral improvements. According to Rosell, Smith did not meet the criteria of a SVP. On redirect, Rosell

said that although Smith met the criteria for pedophilic disorder, he lacked the predisposition to reoffend. Smith rested.

¶ 21    The trial court issued a written order. It found that Smith was a SVP subject to commitment. Smith moved for a new trial, which was denied. Following a hearing, the trial court ordered Smith committed to the custody of IDHS for care, control and treatment until further order of the court. Smith timely appealed.

¶ 22                                    ANALYSIS

¶ 23    On appeal, Smith argues the State failed to prove beyond a reasonable doubt that he was a SVP. He challenges the State's proof that his mental disorder created a substantial probability that he would engage in acts of sexual violence.

¶ 24    The Act authorizes the State to commit a criminal defendant who would otherwise be entitled for release from prison if it proves the person to be sexually violent. *In re Commitment of Montanez*, 2020 IL App (1st) 182239, ¶ 64. A person meets the definition of a SVP where (1) he has been convicted of a sexually violent offense; (2) has a mental disorder, and (3) "the mental disorder creates a substantial probability that he or she will engage in further acts of sexual violence." 725 ILCS 207/15(b)(1)(A), (b)(4), (b)(5) (West 2018). Substantial probability means "much more likely than not." *In re Commitment of Gavin*, 2019 IL App (1st) 180881, ¶ 46. When reviewing a challenge to the sufficiency of the evidence in a commitment case, we consider the evidence in a light most favorable to the State to determine whether any rational trier of fact could have found the State proved the elements in the Act beyond a reasonable doubt. *In re Commitment of Fields*, 2014 IL 115542, ¶ 20.

¶ 25    At the bench trial, the State presented two expert witnesses, both of whom diagnosed Smith with pedophilic disorder. Arroyo diagnosed Smith with pedophilic disorder, nonexclusive type,

8

sexually attracted to both and Weitl diagnosed Smith as suffering from pedophilic disorder in a controlled environment, and other specified paraphilic disorder, nonconsent. Both experts testified that pedophilic disorder does not go away. In Arroyo's and Weitl's opinions, Smith met the criteria of a SVP and they both determined there was a substantial probability that Smith would reoffend if he were to be released from detention.

¶ 26    Both doctors additionally diagnosed Smith with antisocial personality disorder. Smith's expert, Rosell also diagnosed Smith with antisocial personality disorder but opined that he was not sure that pedophilic or paraphilia disorders were a current diagnosis for Smith. He pointed to the difficulty in diagnosing Smith because he had been incarcerated for an extensive period since his last offense. Rosell distinguished Smith's sexual misconduct with inmates, determining it was not predictive of Smith's behavior. In Rosell's opinion, Smith did not exhibit a substantial probability to reoffend.

¶ 27    The results of the diagnostic tests conducted by all three doctors demonstrated that his risk to reoffend was above or well above average. The doctors disagreed about the results of the PPG. Arroyo acknowledged the results did not meet a level of significance such that a pattern of arousal could be determined but found the results indicated some nonconsensual arousal with prepubescent children. Weitl considered the PPG was not reflective of Smith's circumstances due to the discrepancies between the test and his self-reporting. For example, she noted that he claimed to be attracted to adult males, but the PPG showed no significant arousal to adult male subjects. Rosell concluded that the PPG showed a lack of significant arousal but considered that result not uncommon because of the uncomfortable laboratory setting for the test, which subjects find unnatural and to which they are unaccustomed. Rosell relied on the polygraph test results as a positive factor for Smith, while Arroyo and Weitl questioned the results, pointing to the inaccurate

questions that were asked of Smith, as well as the discrepancies with Smith's self-reporting of previous offenses.

¶ 28 Considering the evidence in a light most favorable to the State, we find it was sufficient to establish that Smith met the criteria of a SVP. The differences in the expert opinions does not mean that the evidence was insufficient to prove Smith a SVP beyond a reasonable doubt. *See Montanez*, 2020 IL App (1st) 182239, ¶ 70. As the trier of fact, it was the role of the trial court to determine witness credibility and to resolve any conflicts. *In re Commitment of Trulock*, 2012 IL App (3d) 110550, ¶ 50. It is not our role as a reviewing court to retry Smith. *In re Detention of White*, 2016 IL App (1st) 151187, ¶ 62. Accordingly, we affirm the trial court's finding that Smith met the criteria of a SVP and was subject to further commitment.

¶ 29 CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

¶ 31 Affirmed.